# UNITED STATES DISTRICT COURT
# IN THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

MELVIN SEALS                                                                  PLAINTIFF

VS.                                                                               CASE NO. 1:17cv203

SOUTHWIRE COMPANY                                          DEFENDANT

## ORDER

This cause comes before the court on the motion of defendant Southwire Company for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Melvin Seals has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is, *inter alia*, a race and sex discrimination case which is presently set for trial in January, with this court serving as trier of fact.[1] On August 21, 2017, plaintiff, an African-American male, was fired from his position at an Extruder Operator at Southwire's Starkville factory, where he had worked since 2007. Southwire manufactures wire and cable used in electricity distribution and transmission. The stated reason for plaintiff's termination was that he had accumulated twelve attendance points (for unexcused absences), more than the ten needed for termination under Southwire's policies. As a result, plaintiff's supervisor Fred Turner, in conjunction with Dan Bickford (the plant manager), Brian Davis (the operations manager), and Natalie Henley (the human resources manager) made the decision to terminate his employment. Soon thereafter, plaintiff filed a charge of discrimination with the Equal Employment

---

[1] Plaintiff was originally represented by counsel in this action, but that counsel subsequently withdrew from this case for unexplained reasons and Seals is now litigating this case on a *pro se* basis.

1

Opportunity Commission (EEOC), and, after receiving a right to sue letter, he filed the instant action in this court. Defendant has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding its potential liability in this case and that it is entitled to dismissal as a matter of law.

In the court's view, the summary judgment analysis in this case is quite straight-forward, and it supports a dismissal of plaintiff's claims. Plaintiff raises four claims in this case, and it seems clear that two of them, his ADA discrimination and retaliation claims, are due to be dismissed for failure to exhaust administrative remedies. Before a plaintiff may file a Title VII or ADA claim in federal court, he must first exhaust his administrative remedies. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (noting that the ADA incorporates by reference Title VII's administrative procedures). In Mississippi, plaintiffs must file a charge of discrimination with the EEOC within 180 days of "the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). This exhaustion requirement serves an important purpose, since "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).[2]

In arguing that plaintiff failed to exhaust administrative remedies, defendant notes that, on September 5, 2017, Seals filed two EEOC charges of discrimination, in which he marked only the "race" and "sex" discrimination boxes. Plaintiff failed to check the appropriate boxes for the

---

[2] This court notes that, in the Fifth Circuit, there is a limited exception to the exhaustion requirement for retaliation claims which allows a plaintiff to proceed in district court on an unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court. *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011)(citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). This is clearly not the case here, however, since plaintiff's retaliation claims allegedly arose prior to his filing of both his first EEOC charge and his subsequent lawsuit in this court.

retaliation and disability discrimination claims which he now seeks to assert in this case. This court notes that, in his two-page response to the motion for summary judgment, plaintiff offers no arguments in response to defendant's extensive arguments that he failed to exhaust administrative remedies with regard to his ADA discrimination and retaliation claims. This fact alone could be regarded as a concession of defendant's exhaustion arguments. Moreover, plaintiff appears to have tacitly admitted that he failed to exhaust administrative remedies in his first EEOC charge by filing a second EEOC charge in which he checked boxes for retaliation and sex discrimination.[3]

While the above facts might reasonably be regarded as a concession of defendant's exhaustion arguments, this court will, considering plaintiff's status as a *pro se* litigant, discuss the merits of this issue. This court initially notes that, standing alone, plaintiff's failure to check the appropriate boxes in his EEOC charges, while significant, does not necessarily mean that he failed to exhaust his administrative remedies. *See, e.g. Miller v. Sw. Bell. Tel. Co.,* 51 Fed.Appx. 928, 930 (5th Cir. 2002)( "[F]ailure to fill in the appropriate box in the filed charge" warrants summary judgment on exhaustion grounds only when "coupled with the inability to describe the general nature of the claim in the narrative section of the charge"). In determining whether plaintiff exhausted his administrative remedies, this court must "interpret[] what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the

---

[3] This court does not regard this second EEOC charge, which was filed after this lawsuit, as being a proper part of this case, and it has accordingly not considered it. Defendant argues, and this court agrees, that this second EEOC charge is untimely, inasmuch as it was filed on April 24, 2018 and complained of actions which allegedly occurred on August 17, 2017. This is well past the 180-day deadline for filing such a charge. Moreover, even if plaintiff's second charge had been timely filed, Title VII clearly requires a plaintiff to file an EEOC charge and obtain a right to sue letter before filing a lawsuit in district court, not after. In the court's view, it would invite judicial chaos if the EEOC and district courts were to simultaneously litigate the same claims, and it was clearly not Congress' intent that this occur.

administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970).

Given the language in plaintiff's EEOC charge, this court does not believe that an ADA or retaliation claim might have reasonably been expected to "grow out of" it, notwithstanding plaintiff's failure to check the appropriate boxes. In his EEOC charge, plaintiff alleged as follows:

> I was hired October 2, 2007 as an Extruder Operator. I was discharged August 21, 2017. Dan Brickford, Plant Manager said, I was discharged for having twelve points.
> I believe I was discriminated because of my race/Black/sex/male in violation of Title VII of the Civil Rights Act of 1964, as amended since:
>
> A: I was assessed points for my attendance which I should not have been given points. I went to the hospital on August 17, 2017 because I was ill. I called in to inform my supervisor that I would be in; however, when I got to work, and my supervisor looked at my excuse, there was a prescription that I had to fill. I did not have the prescription filled when I was sent home. I went to the hospital because I was working around an employee who was smoking on the job and this facility is a non-smoking facility. I believe my pain was due to smoking. This generated two points. I returned to work on August 18.
>
> B: I was not given sufficient notice that I had to work on July 15. My supervisor, James Holloway (Black) came to me at 4:00 Friday morning, stating that he forgot to tell me that Bryan Davis (White), Department Manager/Operation Manager sent him an email Wednesday stating that they need C1 to run Saturday. After that notice, I responded that I had already made plans to attend a family reunion. After being notified by my supervisor, he said, he would have to get with Bryan Davis. He did notify the other operator on Thursday that he had to come in on July 15 but he forgot to tell me. Male coworkers agreed to work for me on July 14 and 15.
>
> C: Bryan Davis would not allow my male coworkers to replace me. James Holloway and Fred Turner (Black) supervisors allowed my coworkers to work for a black female in another area. The female was not a qualified operator; she is only a forklift driver. A black male (CV Helper) worked in the same department where I worked was allowed to take off with no advance notice by his brother-in-law, James Holloway. About the middle of May 2017, four CV1 operators (black males, including me) were asked on a Friday to work the following day, Saturday. Two of the black males stated that they had plans with their family already. To my knowledge no points were assessed against them for not working on Saturday because of a late notification from the supervisor. A black male who had accumulated over 18 points did not call in for work three days in a row.

> He was given six points for each day not calling in by Fred Turner. To my knowledge he was discharged between August 24 and August 29. However, to my knowledge he was rehired August 31 or September 1.

[September 5, 2017 EEOC charge at 1-2].

In the court's view, the most important part of the above narrative is the introductory sentence, in which plaintiff wrote that "I believe I was discriminated because of my race/Black/sex/male in violation of Title VII of the Civil Rights Act of 1964, as amended since . . .". In so writing, plaintiff was utilizing his own words, in plain English, and he could not have been clearer that the factual narrative which followed was to be interpreted in light of his allegation that he was discriminated against on the basis of his race and sex. Thus, this is clearly not a case in which plaintiff merely neglected to "check the boxes" for disability discrimination and/or retaliation. To the contrary, plaintiff specifically stated that his factual narrative was to be read as evidence of race and sex discrimination, and this court believes that, in conducting its investigation, the EEOC is entitled to rely upon such specific and clear representations by the charging party.

That brings this court to another compelling reason for finding plaintiff's claims to be procedurally barred, namely that the fact that, in its "right to sue" letter to plaintiff, the EEOC made it clear that it did, in fact, only consider his allegations of race and sex discrimination. In most EEOC "right to sue" letters which this court has considered, the agency has simply stated, in broad and vague terms, whether it been able to verify the plaintiff's claims. In this case, however, the EEOC appeared to go significantly further, finding that plaintiff's own factual narrative did not support his claims for race and sex discrimination. Specifically, the EEOC wrote that:

> Dear Mr. Seals:

> On September 5, 2017, you filed a charge alleging that you were discriminated against in violation of the Title VII of the Civil Rights Act of 1964, as amended, in that you were discharged because of your race (black) and sex (male). This letter is provided as notification and explanation why the EEOC will not continue its investigation of this matter.
>
> The Respondent's actions regarding your employment do not appear to have been a violation of the statutes we enforce. In order to establish a violation on a Discharge issue, the evidence must show in the following order of proof 1) Charging Party belongs to a protected group; 2) Charging Party was discharged; 3) Others similarly situated but not of Charging Party's group were not discharged; and 4) Respondent cannot explain the difference in treatment or Respondent's explanation is in fact pretext for discrimination. Although you are member of the protected group(s) and you were discharged, the Respondent has cited a non-discriminatory reason for your discharge, e.g., "the accumulation of attendance points". *Furthermore, while you alleged discrimination, those allegedly treated better included employees who are black and male like yourself.* Based on this analysis, we are recommending this matter be closed.

(Pl. Dep. II, 190:7-11, Ex. 27)(emphasis added). Thus, the EEOC made it clear that it only considered plaintiff's claims of race and sex discrimination, and it gave no indication whatsoever that it had conducted any inquiry into any disability or retaliation claims. That being the case, this is not a case in which this court is required to speculate regarding what matters the EEOC might have chosen to investigate in response to plaintiff's charge. To the contrary, the EEOC's right to sue letter clearly suggests that it considered only plaintiff's claims of race and sex discrimination, and, given the language of plaintiff's charge, this fact is hardly surprising.

This court further notes that there is synergy in this case between defendant's procedural defenses based on failure to exhaust and its alternative arguments that plaintiff's non-exhausted claims lack substantive merit. Indeed, in deciding whether a particular, allegedly non-exhausted, claim could "reasonably be expected to grow out of the charge of discrimination," it seems clear that the stronger a resemblance which the claim bears factually to a traditional ADA discrimination or ADA retaliation claim, then the more likely it is that the EEOC would have raised the issue on its own motion. In its briefing, defendant notes numerous substantive

weaknesses in plaintiff's ADA disability and retaliation claims, and, given the procedural bar in this case, it is unnecessary for this court to discuss them in any depth.

Briefly, however, this court notes that plaintiff appears to argue that defendant failed to reasonably accommodate his requests for non-smoking facilities based upon his having been diagnosed with testicular cancer years previously. This court's review of the scant authority in this context suggests that this is an evolving area of the law in which some commentators have argued that the ADA *should* cover second-hand smoke cases. *See, e.g.* Lainie Rutkow, <u>Banning Second-Hand Smoke in Indoor Public Places Under the Americans with Disabilities Act: A Legal and Public Health Imperative</u>, 40 Conn. L. Rev. 409 (2007). However, the actual authority in this context appears to be exceedingly limited, and this court is unaware of any decisions involving facts similar to those here.

This court's "best guess" is that the ADA might someday be held to cover second-hand smoke complaints by employees who suffer from conditions, such as asthma, which require them to avoid cigarette smoke. However, plaintiff cites no authority indicating that there is a sufficient link between second-hand cigarette smoke and testicular cancer such as to render non-smoking premises a required accommodation for an employee with his medical history, and this court is unaware of any such authority. Thus, plaintiff presents what appears to be a quite novel theory of disability discrimination, unsupported by any cited precedent, and this leaves him in a poor position to argue that the EEOC should have interpreted his charge as asserting an ADA claim. Making his burden even more difficult, plaintiff must show that his termination was a "but for" cause of his engaging in protected activity under any non-Title VII claims he might assert. *See e.g. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Given these

formidable obstacles, it seems quite unlikely that plaintiff's proof would be sufficient to meet this burden, even if he had exhausted his ADA discrimination and retaliation claims.

Once again, however, this court concludes that plaintiff's ADA discrimination and retaliation claims were not properly exhausted before the EEOC, and this fact alone requires that they be dismissed. This court considers it important to note the substantive weaknesses in plaintiff's claims, however, since they make it much more difficult to contend that such claims should have "grown out of" plaintiff's EEOC charge. Indeed, it cannot validly be contended that the EEOC should have read plaintiff's charge as potentially asserting an ADA discrimination or retaliation claim when plaintiff specifically asserted in his charge that the factual narrative which allegedly touches upon these issues was to be read as part of his Title VII race and sex discrimination claims. As quoted above, the EEOC found that plaintiff's own recitation of the facts did not support recovery even under Title VII's "motivating factor" standard, and it strains credulity to argue that a claim of retaliation should have "grown out of" a charge which was specifically limited to race and sex discrimination. In light of the foregoing, this court concludes that plaintiff failed to exhaust his administrative remedies with regard to his claims for ADA discrimination and retaliation, and these claims will therefore be dismissed without prejudice.

This court now turns to plaintiff's race and sex discrimination claims, which were raised before the EEOC and are thus properly before it. Where there is no direct evidence of discrimination, this court must follow the *McDonnell Douglas* framework to determine whether claims of discrimination can survive. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first prove a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was

qualified for the position; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably than similarly situated employees under nearly identical circumstances. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009). Should the plaintiff establish a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the challenged decisions. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005). Once the defendant provides a legitimate, nondiscriminatory reason, the plaintiff must then show that a genuine issue of material fact whether the legitimate reasons given by the defendant are a pretext for discrimination. *Id.*

In the court's view, the Title VII analysis in this case is quite straightforward, since the deficiencies in plaintiff's race and discrimination claims arise from an evident mis-understanding of the basic purpose of the statute. Title VII was enacted to combat adverse employment decisions which are made *because of* (at least in part) the plaintiff's race and/or sex. From reading plaintiff's submissions, he clearly believes that he received a "raw deal" with regard to his termination, inasmuch as he claims that he was wrongly assessed negative "points" for absences in a manner that, he claims, differed from the treatment afforded other employees. Plaintiff repeatedly detracts from his own claims, however, by citing allegedly better treatment which defendant afforded to co-workers who were, like himself, black males. That being the case, even assuming that these employees were treated better than plaintiff, plaintiff's race or sex was clearly not the reason for such better treatment.

As quoted previously, the EEOC noted in its right to sue letter that plaintiff's allegations of race and sex discrimination were contradicted by his own factual narrative, such as his allegation that:

> About the middle of May 2017, four CV1 operators (black males, including me) were asked on a Friday to work the following day, Saturday. Two of the black males stated

9

that they had plans with their family already. To my knowledge no points were assessed against them for not working on Saturday because of a late notification from the supervisor. A black male who had accumulated over 18 points did not call in for work three days in a row. He was given six points for each day not calling in by Fred Turner. To my knowledge he was discharged between August 24 and August 29. However, to my knowledge he was rehired August 31 or September 1.

[*Id.*].

Plaintiff's contradictory allegations aside, the facts in the record relating to the Southwire workplace are, in this court's view, hardly suggestive of racial discrimination. Defendant notes that all of the operators that worked in Seals' immediate area were also African-American men, and this fact does tend to make it seem even less likely that defendant was motivated by an animus against individuals of plaintiff's race and sex. Perhaps more importantly, defendant notes that "[a]t the time of his termination, plaintiff's immediate supervisors were Fred Turner and James Holloway, both of whom are African-American men." [Defendant's brief at 2]. Indeed, this court's reading of the record is that Southwire provided a quite racially diverse workplace, both at the employee and supervisor level. Moreover, plaintiff had worked at Southwire for ten years at the time he was fired, and the company was obviously aware of his race during that lengthy time period. In light of these facts, the weaknesses in plaintiff's proof of race discrimination become even more glaring.

In his EEOC charge, plaintiff did allege an incident in which a female employee was treated better than he was, writing that "James Holloway and Fred Turner (Black) supervisors allowed my coworkers to work for a black female in another area." Immediately after so alleging, however, plaintiff undercuts his own proof by writing that "[t]he female was not a qualified operator; she is only a forklift driver." [EEOC charge at 2]. In its brief, defendant notes that "[i]n contrast to forklift drivers and helpers, positions that require relatively little skill,

10

plaintiff was specifically trained to work on the C1 Extruder machine for a month with trainers from Germany and approximately two months with coworkers where he was trained to make adjustments during the machine's operation, which takes significant skill." [Summary judgment brief at 7].

Thus, defendant has submitted what this court regards as a logical reason, supported by plaintiff's own EEOC charge, as to why its female employee found it easier to obtain substitute workers than plaintiff did. Defendant notes that its employee handbook, of which plaintiff was provided a copy expressly states that "[i]f you would like to substitute a fellow employee to work all or part of your scheduled shift, you must provide an *equally qualified* substitute and have your supervisor's prior approval." (Ex. 12, at 12-13; Henley Decl. ¶ 4)(emphasis added). Plaintiff's own admission that his female co-worker was merely a forklift operator thus casts doubt upon his own claims, and his deposition testimony raised additional doubts in this context.

In his deposition, plaintiff made clear his belief that the female forklift operator, identified as Teka White, was given preferential treatment because she allegedly had a sexual relationship with supervisor James Holloway, an African-American male. In his deposition, plaintiff testified that:

> Q: So it sounds like what you're saying is that the female forklift driver was given special treatment, not just because she was a female, but also because she had a personal relationship with this man.
> A: Correct. That too.

[Plaintiff's depo. at 168]. Thus, plaintiff testified to his belief that the alleged favoritism shown to White resulted partly from her personal relationship with a supervisor, but this is not the sort of discriminatory motivation which is addressed by Title VII. Indeed, the Fifth Circuit has held that "when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other

11

than gender." *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 382 (5th Cir. 2003). As a non-attorney, it is understandable that plaintiff would fail to grasp that his deposition testimony seriously damages his claims, but it clearly does.

This court finally notes that, in his complaint, plaintiff asserted for the first time that a white male comparator had been treated better than he was. Specifically, plaintiff claims that around September or October 2015 a white employee named George James did not receive a major discipline regarding excessive quantity of scrap and that plaintiff unfairly took the blame for his mistake (although he was later able to demonstrate his innocence).[4] In his deposition, plaintiff conceded that he did not include this allegation in his EEOC charge, because he concluded that it was time-barred. Specifically, plaintiff testified that he did not include this claim in his EEOC charge because "the time period was out of that 180 days frame of when that incident occurred, so I couldn't file my actual charge on that because it was out of the statute of limitations." [Plaintiff's depo. at 16]. Thus, plaintiff specifically conceded in his deposition that any charge of discrimination based upon the 2015 incident was time-barred, and he provides no arguments in his response to the summary judgment motion which would cast doubt upon this conclusion.

Even assuming that the 2015 incident is not time-barred, the fact remains that plaintiff specifically chose not to present it before the EEOC based upon his conclusion that it *was* time-barred. Thus, the EEOC never had an opportunity to consider the claim, which certainly makes it problematic for plaintiff to include this allegation in this case. Moreover, even if this court were to conclude that plaintiff's claim relating to the 2015 incident was properly before it, it

---

[4] The facts surrounding this incident are rather complex, but, for the purposes of this motion, this court will assume that plaintiff is correct that he was unfairly blamed in this regard.

would still conclude that a single incident in which a white co-worker was allegedly treated better than plaintiff, during his ten year employment at Southwire, is insufficient to establish fact issues regarding race discrimination. In so stating, this court emphasizes once again that plaintiff asserts several other incidents in which African-American co-workers, both male and female, were treated better than him. Moreover, plaintiff offers this court no direct evidence that any of his supervisors were motivated by animus against him on the basis of his race or sex, and this court has noted that many of his co-workers and supervisors were African-American males such as himself.

Even with regard to the 2015 incident, plaintiff himself seemed to have nothing more than a subjective belief that race might have had something to do with his unfairly being blamed for creating excessive scrap. It appears that one limited use of the 2015 incident for plaintiff might be to demonstrate potential racial animus on the part of operations manager Brian Davis, who was one of four individuals who had a role in the 2018 decision to fire plaintiff. Even as to Davis, however, plaintiff provided scant objective evidence which might support a finding of racial animus. For example, plaintiff testified that:

> Q: What about Brian Davis, do you believe that he was recommending you were disciplined in 2015 because you're a black male?
> A: I'm not assuming he was, but I just didn't understand why they wanted me disciplined and not the other guy and he was a different race. * * *
> Q: So Mr. Davis didn't ever say anything to you that was racially offensive, did he?
> A: No, he didn't.

[Plaintiff's depo. at 28].

Plaintiff testified that he had a subjective suspicion that Davis might have been racist, but his own subjective (and interested) belief in this regard is not competent summary judgment evidence regarding Davis' state of mind. In the court's view, extrapolating from a single 2015 incident that Davis may have been racist is simply not a sufficient basis for a Title VII

13

discrimination claim. This is particularly true considering the fact that, to reiterate, plaintiff complained of several other incidents in which other black male employees likewise received better treatment than he did. Making plaintiff's allegations *vis a vis* Davis even weaker, he writes in his response to the summary judgment motion that "[d]ue to an incident in 2015, Brian Davis has a negative attitude *towards me*." [Plaintiff's response at 2 (emphasis added)]. Obviously, any *personal* animosity which Davis might have had towards plaintiff arising from the 2015 incident is not evidence of race discrimination, but that is what plaintiff appears to allege. This court also notes that plaintiff has a rather weak temporal proximity argument as it relates to the 2015 incident, given the extensive time which passed between it and his 2017 termination. Indeed, this court does not regard plaintiff's ADA retaliation claim as being, by any means, strong, but he at least has a temporal proximity argument that his termination was somewhat close in time to his complaints about second-hand smoke. That is not the case with regard to the 2015 incident.

Under these circumstances, plaintiff's circumstantial case for discrimination is exceedingly weak, and this court does not believe that it is sufficient to even establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework. Assuming that plaintiff is able to make a *prima facie* showing of race or sex discrimination, however, this court concludes that plaintiff has failed to cast doubt upon defendant's stated reason for terminating him, namely that he had accumulated twelve attendance points, which is, once again, two more than the maximum allowable under company policy. This court therefore concludes, as the EEOC did, that plaintiff's claims of race and sex discrimination are not supported by his own allegations, and it has previously concluded that his ADA discrimination and relation claims were not

properly exhausted before the EEOC.  These claims are therefore due to be dismissed, and defendant's motion for summary judgment will be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 11th day of October, 2018.

        **/s/ MICHAEL P. MILLS**
        **UNITED STATES DISTRICT JUDGE NORTHERN**
        **DISTRICT OF MISSISSIPPI**